UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | | |
|---|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., a Delaware corporation, | ) ) ) ) | CIV.  07-1024-KES |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| INN DEVELOPMENT, INC., a South Dakota corporation; ROBERT W. ORR, an individual; and RENEE LOGAN, an individual, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Howard Johnson International, Inc. (HJI) filed this suit seeking damages arising out of Defendants' alleged breach of contract.  Docket 1. Defendant Inn Development, Inc., is currently in default.  HJI has filed a motion for summary judgment against Defendants Robert Orr and Renee Logan.  Docket 51.  Orr and Logan, acting pro se, have filed a response to HJI's motion for summary judgment.  Docket 70, 74.  For the reasons stated below, HJI's motion for summary judgment is granted.  As discussed in this opinion, since the Court is unable to determine the amount of damages to which HJI is entitled based on the record at this time, the Court sets the matter of damages for a hearing.

**FACTUAL BACKGROUND**

Following are the facts, construed in favor of the nonmoving parties, Orr and Logan.

**License Agreement**

On December 31, 2001, Inn Development, Inc., (Inn Development) entered into a License Agreement with HJI regarding a hotel in Norfolk, Nebraska.  Plaintiff's Statement of Undisputed Material Facts (PSUMF), Docket 52, ¶ 1; License Agreement, Docket 53-2.  In that contract, Inn Development agreed to operate a Howard Johnson Express Inn for fifteen years.  License Agreement ¶¶ 1, 5.  Inn Development agreed to renovate the facility in accordance with System Standards and Approved Plans as well as a Punch List attached to the License Agreement.  Id. at ¶ 3.1; Docket 53-2, pages 33-40 (Punch List).

The License Agreement provided for quality assurance inspections, obligating Inn Development to permit HJI representatives to inspect the facility at their initiative.  License Agreement, ¶¶ 3.9, 4.8.  The quality assurance inspections by HJI involved a review of Inn Development's facility, and the quality assurance scores for such inspections included an evaluation of "the Facility and its operations, records, and Mark usage to test the Facility's compliance with System Standards and this Agreement."  Id. at ¶ 4.8.

The License Agreement provided that Inn Development will pay HJI recurring fees every month, including a royalty based on monthly gross room

2

revenues, a marketing contribution, a room sales charge, taxes and interest. License Agreement, ¶¶ 7.1-7.3.

**Default and Termination**

The License Agreement stated that the licensee, Inn Development, "will be in default" of the agreement if "(a) you do not pay us when a payment is due, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement." Id. at ¶ 11.1.  If such a default is not cured, HJI "may terminate this Agreement by written notice." Id.  "In the case of a quality assurance default, if you have acted diligently to cure the default but cannot do so and have entered into a written improvement agreement with us within 30 days after the ailing inspection, you may cure the default within 90 days after the failing inspection.  We may terminate the License if you do not perform that improvement agreement." Id.  Section 11.2 of the License Agreement stated that HJI may terminate the license when it sends written notice to the licensee after the licensee has failed to cure a default.  That provision also said that HJI may terminate the license if "you receive two or more notices of default from us in any one year period (whether or not you cure the defaults)." Id. at ¶ 11.2. According to the Addendum to the License Agreement, the licensee is entitled to thirty days written notice "with an opportunity to cure said default prior to termination" in the event of a breach of the License Agreement, failure to meet

3

performance or quality standards, or failure to make payments in accordance with the License Agreement.  Docket 53-3, page 1.

While the License Agreement included a Liquidated Damages provision which discussed potential damages in the event of a breach, an Addendum to the License Agreement replaced that provision, stating instead that, upon termination, licensee "shall be, continue and remain liable to us for any and all damages which we have sustained or may sustain by reason of such default or defaults and the breach of the License Agreement on your part until the end of the Term."  Docket 53-3, page 1; License Agreement, ¶ 12.1 (liquidated damages provision).

Finally, the License Agreement included the following provision regarding attorneys' fees in the event of a breach:  "The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."  License Agreement, ¶ 17.4.

**Guaranty**

At the time of the completion of the License Agreement, the parties also signed a Guaranty, where Robert Orr and Renee Logan personally guaranteed that Inn Development's "obligations under the Agreement . . . will be punctually paid and performed."[1]  Docket 53-4.  That document went on to

---

[1] Carolyn Orr also signed the guaranty and was originally named as a Defendant in this case.  Docket 53-2, page 43.  However, at Plaintiff's request she

state, "Upon default by Licensee and notice from you we will immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the Agreement." Id.

**Note**

Finally, the parties also executed an Integrated System Development Advance Note, presumably at the same time as the License Agreement was signed. Docket 53-5 (undated). That Note provided that maker Inn Development promised to pay HJI $16,475.58 for the purposes of opening the Nebraska facility. Id. at 1. The Note stated that one-third of the principal amount will be forgiven on each anniversary of the facility's opening date, and that the Note will be discharged once the principal is completely forgiven. Upon termination of the franchise agreement, stated the Note, "the outstanding principal balance of this Note shall be immediately due and payable." Id. If the Note is accelerated and is not paid in full with ten days after it is due, HJI will be owed interest of lesser of eighteen percent or the highest rate allowed by law. Id. Finally, the Note said that, should collection of the Note require legal action, HJI is entitled to attorney's fees and costs. Id.

**Termination of the License Agreement**

The parties executed these documents on December 31, 2001. On July 12, 2002, HJI conducted a quality assurance inspection of the Norfolk,

---

was dismissed from the lawsuit on January 25, 2007. Docket 12.

5

Nebraska, facility.  PSUMF ¶ 21.  The facility received a failing score.  On

October 29, 2002,  the facility failed another quality assurance inspection.[2]  Id.

at ¶ 22.  On January 17, 2003, HJI sent Inn Development a letter stating "We

write to give you formal notice of your default and termination . . . under the

Agreement for the Facility."  See Docket 53-6.  That letter went on to provide

avenues for Inn Development to cure the defaults and avoid termination, slated

for April 1, 2003.[3]  Id.

Specifically, the letter detailed Inn Development's financial default,

stating that the licensee owed $30,869.04 to HJI for recurring fees and other

unpaid fees and charges.  HJI stated that Inn Development must pay the

account balance by March 13, 2007, warning that failure to  do so will result in

eliminating Inn Development's access to the central reservation system.

Additionally, partial payment would not cure the default.  "Unless full payment

is made by March 17, 2003, or the Franchise Compliance Committee extends

the Termination Date, your License will be terminated[.]"  Id. at 2.

The January 17, 2003, letter also noted the licensee's quality assurance

default in failing two consecutive inspections, stating that the facility must

---

[2] While the Court has not received documentary support of the two failing quality assurance inspections, Defendants do not deny that the facility failed two inspections in October 2002 and July 2002.  Thus, the fact of Inn Development's two failed inspections is deemed admitted.

[3] The Court notes that the opportunities to cure the default outlined by HJI do not conform to the provision in the License Agreement that contemplated cure of a default.  See supra at 3; License Agreement, ¶ 11.1.

6

receive a quality assurance score of 370 by March 17, 2003, or the default would result in termination of the License Agreement.  "Unless we extend the Termination Date, the Agreement will be terminated[.]" Id. at 2.  Finally, the letter warned that if the license is terminated, Inn Development Inc. "will be obligated to pay us Liquidated Damages[.]" Id. at 3.  The letter did not refer to the actual damages clause in the Addendum to the License Agreement.

On January 29, 2003, Daniel Olson, HJI's Quality Assurance Director sent Inn Development a letter and a draft of an improvement schedule, stating that "[w]e are eager to assist you in curing this default, to avoid the potential termination of the property due to Quality Assurance."  Docket 74-2.  The improvement schedule listed many items "to be completed by March 24, 2003."  Docket 74-3.  In response, Inn Development sought extensions and waivers on several items on the improvement schedule.  Docket 74-4.  HJI replied by granting all of these requests except one related to installation of a voice mail system.  Docket 74-5.  On March 1, 2003, Inn Development  sought an extension for the quality assurance inspection expected before March 24, 2003, requesting that the inspection take place in April to permit additional time to complete the improvement schedule.  Docket 74-7.  The Court is aware of no response from HJI to that request.

At an inspection on March 21, 2003, the facility failed its third quality assurance inspection.  On May 2, 2003, HJI notified Inn Development by letter that it terminated the License Agreement because Inn Development  "failed to

7

cure your default under the Agreement for your failure to satisfy the required Quality Standards."  Docket 53-7.

On May 27, 2003, Inn Development requested a reinstatement of the franchise agreement, stating that all current fees had been paid to HJI as of May 13, 2003, and listing the improvements made to the facility pursuant to previous quality assurance reviews.  Docket 74-8.  On June 2, 2003, Inn Development requested from Dan Olson a waiver regarding flooring in some suites.  Docket 74-9.  Later that month, HJI sent a letter to Inn Development regarding their request for reinstatement, stating clearly that the former License Agreement between the parties was terminated and outlining the process for reinstatement.  Docket 74-11.  Inn Development completed an application for reinstatement and sent that application to HJI along with payment of the reinstatement fee of $1000.  Docket 74-12, 74-14.  On October 6, 2003, HJI sent Inn Development a letter confirming receipt of the application and the fee.  Docket 74-14.  The Court is unaware of any further correspondence between the parties.

On October 9, 2006, HJI filed this lawsuit seeking judgment against Guarantors Orr and Logan "for all actual damages due under the License Agreement and the outstanding principal balance due under the Note, together with interest, attorneys' fees, and costs of suit."  Docket 1, page 14.  On October 10, 2007, an entry of default was entered as to defendant Inn Development for failure to appear.  Docket 18.  Plaintiff filed this motion for

8

summary judgment on April 17, 2008, seeking judgment against Defendants Orr and Logan.  Docket 51.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by

affidavits or otherwise showing that a genuine issue exists.  Forrest v. Kraft
Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

First, the Court notes the unique posture of this case.  While the Clerk of
Court has filed an entry of default against Defendant Inn Development, this
current motion for summary judgment applies to Defendants Orr and Logan.
Thus, the requirements of Federal Rule of Civil Procedure 55 regarding notice
and settlement of damages do not apply, since Plaintiff at this time has not
sought a default judgment against Inn Development.  Instead, it appears that
Plaintiff is pursuing Defendants Orr and Logan for the purposes of collecting its
damages.  Thus, while Inn Development's default in this matter is relevant to
the liability of Orr and Logan (as discussed below), the Court need not explicitly
evaluate the suitability of a default judgment against Inn Development, as to
date Plaintiff has only asked for a judgment against Orr and Logan.

Second, the Court notes that it is to construe pro se complaints liberally.
Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)
(per curiam);  Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).  However, a
party's pro se status does not "entitle him to disregard the Federal Rules of
Civil Procedure."  Bennett v. Dr. Pepper/Seven Up, Inc., 295 F.3d 805, 808 (8th
Cir. 2002).  Federal Rule of Procedure 56(e)(2) states that a party opposing a
motion for summary judgment "may not rely merely on allegations or denials in
its own pleading; rather, its response must – by affidavits or as otherwise

10

provided in this rule – set out specific facts showing a genuine issue for trial."

While Defendants' filings may adhere to Rule 56(e)(2), the Court acknowledges

that Defendants' filings with this court do not conform to the local rules

regarding motions for summary judgment.  See D.S.D. CIV. LR 56.1(B), (D)

(stating that a party admits the moving party's facts unless it "respond[s] to

each numbered paragraph in the moving party's statement [of material facts]

with a separately numbered response and appropriate citations to the

records").  In fact, Defendant Logan has not personally filed any formal

objection to the motion for summary judgment, although the arguments

presented by Defendant Orr could apply to Logan as well.  Despite the failures

of Defendants to conform their arguments to the requirements of the local

rules, the Court finds that, even if it very liberally construes Defendants'

pleadings on this motion, Defendants have failed to demonstrate a genuine

dispute of material fact and that HJI is entitled to judgment as a matter of law.


**A.  The Guaranty**

The Guaranty signed by Orr and Logan states that they "irrevocably and

unconditionally . . . guaranty that [Inn Development's] obligations under the

Agreement, including any amendments, will be punctually paid and

performed."  Docket 53-4.  Upon default by the Licensee and notice from HJI,

Defendants promise to "immediately make each payment and perform or cause

Licensee to perform, each unpaid or unperformed obligation of Licensee under

11

the Agreement." Id.  In its letter dated May 2, 2003, HJI gave formal notice of

the termination of the License Agreement and informed Inn Development of its

responsibility to pay the full amount of all current fees and charges as well as

liquidated damages and the balance on the Note.  Docket 53-7.  This letter was

addressed to Renee Logan at Inn Development and copied to Robert Orr.  Id.

According to the explicit terms of the License Agreement, New Jersey law

is to be utilized to interpret the contract.  License Agreement, ¶ 17.6.1.  To be

entitled to summary judgment on a guaranty, Plaintiff must demonstrate the

following:

> 1) execution of the guarantee by the guarantor (i.e., that it was the
> defendant who signed the guarantee);
> 2) the principal obligation and terms of the guaranty;
> 3) the lender's reliance on the guaranty in extending monies to the
> borrower;
> 4) default by the principal obligator;
> 5) written demand for payment on the guarantee;
> 6) failure of the guarantor to pay upon written demand[.]

 United States v. DelGuercio, 818 F.Supp. 725, 727-28 (D. N.J. 1993) (citing 38

C.J.S. Guaranty §§ 8-14 and 38 Am.Jur.2d § 119).  Under New Jersey law, the

terms of a guaranty, like the terms of any other contract, are to be given their

full meaning when they are unambiguous, in accordance with the reasonable

expectations of the parties.  Center 48 Ltd. P'ship v. May Dep't Stores Co., 810

A.2d 610, 619 (N.J. Super. Ct. App. Div. 2002).

Five of the six elements needed to grant summary judgment are

unaddressed and therefore wholly uncontroverted by Defendants.  Defendants

do not contest, and therefore admit, the proper execution of the guaranty. Additionally, Defendants do not argue that the guaranty or its terms are ambiguous, and the Court finds that the guaranty is unambiguous and that it will give meaning to the unambiguous terms of the guaranty. Regarding the third element listed above, HJI's reliance on the guaranty in making the loan to Inn Development is explicitly included in the guaranty. Docket 53-4 (stating that the guarantors' promises were intended to "induce [HJI] . . . to sign the License Agreement" with Inn Development). Finally, Defendants do not contest that they received notice of a demand for payment on the guaranty or that they have failed to pay. See Docket 53-6.

Defendants raise one argument the Court believes addresses the default of the principal obligator – their assertion that Inn Development did not breach the terms of the contract. Docket 74. Orr states it this way: "Orr contends that he is not required to make payment for damages or on the Note because there are genuine issues of material fact regarding Inn Development's alleged breach of the Licence [sic] Agreement." Id. at 1.

Defendant Inn Development has defaulted on this lawsuit. Docket 18. As a result, the "facts alleged in the complaint are taken as true, except facts relating to the amount of damages." Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001); 1A Wright & Miller, Federal Practice and Procedure § 2688. The complaint in this case alleges that HJI was damaged when Inn Development failed to pay actual damages suffered by HJI because of

13

the contract's premature termination, and when it failed to advance to HJI the balance on the Note due upon termination.  Docket 1 ¶¶ 37-38, 43.  Under the unambiguous terms of the guaranty, Orr and Logan promised that Inn Development would perform its obligations under the License Agreement.  Docket 53-4.   Taking the allegations in the complaint as true, the Court finds that Inn Development failed to complete its promised performance under the License Agreement, and that according to the unambiguous terms of the guaranty Orr and Logan are now liable for damages and for the balance of the Note.[4]  See Ramada Worldwide, Inc. v. Jaydutt, Inc., No. 06-3557 (FSH), slip op. at 4 (D. N.J. Jan. 7, 2008) (unpublished) (stating that "this Court's entry of default against corporate Defendant Jaydutt is sufficient to establish 'default by the principal obligator'" and awarding summary judgment to franchisor against guarantors).

---

[4] Inn Development failed to defend itself against these allegations that it breached the License Agreement, resulting in an entry of default against it.  Any allegations by Orr and Logan at this point regarding whether or not Inn Development actually breached the License Agreement therefore must be disregarded by this Court.  Because of the current posture of this case, the Court accepts these allegations regarding Inn Development's breach of the contract as true, despite arguments by Defendants Orr and Logan to the contrary.  The Court believes that Orr and Logan, as guarantors who signed the Guaranty,  assumed the risk of Inn Development's failure to defend a lawsuit, and thus it is not improper to use Inn Development's admissions-by-default against them, given their status as officers within Inn Development who personally guaranteed that they would ensure that Inn Development performed its obligations under the License Agreement.

As there is no genuine dispute of material fact regarding the enforceability or current application of the Guaranty, and as the Court finds that Plaintiff is entitled to judgment as a matter of law against Orr and Logan based upon their status as Guarantors of Inn Development's conduct, the Court grants Plaintiff's motion for summary judgment against Orr and Logan.

**B.   The Note**

The Integrated System Development Advance Note provides that Inn Development owes HJI $16,475.858, with the principal being forgiven in three installments over three years.  Docket 53-5.  However, if the Note is accelerated and not paid within ten days after it is due, Inn Development agreed to pay interest at the lesser of eighteen percent per year or the highest rate allowed by law.  Id.  Upon termination of the License Agreement, the balance of the Note is due immediately.  Id.  In its letter dated May 2, 2003, in which it gave formal notice of termination of the License Agreement, HJI stated that Inn Development "must also repay the outstanding Development Incentive of similar loan as of the Termination Date.  This carries a principal balance of $10,983.72."  Docket 53-7.  HJI states that since the termination of the License Agreement, it has made "numerous demands" that Inn Development, Orr, and Logan pay the outstanding balance on the Note.  PSUMF, ¶ 34.  Orr and Logan do not dispute HJI's statement that it has made several demands for payment on the Note, nor do they dispute HJI's figure regarding the outstanding balance on the Note.

No dispute of material fact exists regarding the enforceability of the Note or Orr and Logan's responsibility to pay the Note under the terms of the Guaranty upon default by Inn Development.  As the Court has already noted, HJI terminated the License Agreement on May 2, 2003, making the balance of the Note immediately payable by Inn Development.  Thus, as guarantors, Orr and Logan are liable for the balance of the Note, or $10,983,72.

Plaintiff also seeks an award of pre-judgment interest under the terms of the Note.  The Court agrees that Orr and Logan are liable for pre-judgment interest on the balance of the Note, according to the unambiguous terms of the Note.  Docket 53-5.  To assist the Court in determining the proper amount of pre-judgment interest, Plaintiff is ordered to submit a calculation of the amount of pre-judgment interest it is entitled to receive as well as a description of how it calculated that amount by January 16, 2009.  Defendants may file objections to Plaintiff's calculation within ten days of Plaintiff's proposal.  At that time the Court will determine the amount of pre-judgment interest on the Note to which Plaintiff is entitled.

**3.  Damages**

The License Agreement includes a section entitled "Liquidated Damages" and provides a calculation of these damages to be the lesser of $1,500 times the number of guest rooms in the Facility or an amount relatively equivalent to two

16

years of royalties and fees owed to HJI.[5]   Docket 53-2 ¶ 12.1.  However, the

Liquidated Damages portion of the License Agreement was replaced by the

Addendum to the License Agreement for the State of South Dakota.[6]   Docket 53-

3.  The Addendum stated that "Section 12 of the License Agreement is amended

by the deletion of the requirement to pay liquidated damages" and replaced with

the following damages provision:

> . . . [I]n the event of termination or cancellation of the
> License Agreement under any of the other provisions therein, you
> shall be, continue and remain liable to us for any and all damages
> which we have sustained or may sustain by reason of such default
> or defaults and the breach of the License Agreement on your part
> until the end of the Term.
> The amount of damages for which you may be liable under
> the preceding sentence is uncertain.

Id.  The License Agreement requires Inn Development to pay HJI monthly

recurring fees, which include royalties, room sales charges, and marketing fees

pursuant to Section 7 of the License Agreement.  Finally, Inn Development also

---

[5] Under the terms of the Liquidated Damages provision, the Court estimates that HJI would have been entitled to $100,500 using the $1500 per room calculation, considering that the Nebraska facility had 67 guest rooms.  Utilizing the alternate calculation for damages, the Court estimates that HJI's liquidated damages would be roughly $66,767, or two times the $33,383.50 in royalties Inn Development had accrued in eleven months from May 1, 2002, through April 31, 2003.  See Docket 52, page 8-9.

[6] The Court notes that in its letter of termination, HJI states that Inn Development "must pay us Liquidated Damages of $100,500.00 as specified in the Agreement."  Docket 53-7.  As stated above, the Liquidated Damages portion of the License Agreement was superceded by the Addendum to the License Agreement.  Docket 53-3.  Thus, the Court believes that HJI's demand for payment of Liquidated Damages upon termination of the License Agreement is in error.

agreed to pay interest "on any past due amount payable to [HJI] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable rate, whichever is less, accruing from the due date until the amount is paid."  License Agreement, ¶ 7.3.

In its motion for summary judgment, HJI refers to such damages as discussed in the Addendum to the License Agreement as "actual damages." Docket 52, ¶ 35.  HJI admits that such actual damages "sustained by HJI are not subject to exact calculation, as HJI does not have the ability to ascertain the precise amount of Inn Development's actual gross room revenues through the end of the fifteen-year term of the License Agreement."[7]  Id.  However, HJI does

--------

[7] The Court notes that many New Jersey cases involve the enforceability of liquidated damages provision, generally upholding them as enforceable and recognizing that they can be useful, given the difficulty in calculating actual damages over the life of a long contract such as the one here between HJI and Inn Development.  See, e.g., Days Inn Worldwide, Inc. v. Satyam Shivam Assoc., LLC, No. L-1938-05, 2008 WL 3287234, *4 (N.J. Super. App. Div. 2008) (stating that "Courts favor enforcement of liquidated damage clauses because of principles of judicial economy and freedom of contract"); Super 8 Motels, Inc. v. B and J (Radha), LLC, No. 05-5173, 2006 WL 3256828, *6 (D. N.J. Nov. 9, 2006); Super 8 Motels, Inc. v. Amba LLC, No. 05-2767 (JCL), 2006 WL 3041084, *5 (D. N.J. Oct. 26, 2006) (noting that "claims for liquidated damages also do not require further evidentiary inquiry"); Ramada Franchise Systems, Inc. v. Eagle Hospitality Group, No. Civ.A. 03-3585(KSH), 2005 WL 1490975, *7 (D. N.J. June 23, 2005) (stating that stipulated damages provisions "can provide a useful and efficient remedy").  In contrast, the Court's review of caselaw both inside and outside of New Jersey reveals very few analogous cases evaluating the enforceability of an "actual damages" provision.  The Court is perplexed as to why the parties amended the License Agreement to replace the liquidated damages provision with the provision included in the Addendum.  While, of course, the parties are free to bargain regarding the remedies for breach of a contract, the Court encourages the use of liquidated damages provisions in situations such as this, where actual damages for a long-term contract are very difficult to predict or calculate with reasonable

attempt to calculate such damages, averaging the daily facility fees for the twelve months prior to the contract's termination.  HJI arrives at a $99.95 per day facility fee, which it then projects over the 5002 remaining days left on the fifteen-year contract, arriving at a damages calculation of $499,949.90.[8]  Id. at ¶ 41.

Under New Jersey law, once a plaintiff has established an injury from breach of contract, the plaintiff must prove the amount of damages "to a reasonable degree of certainty."  Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 219 F. Supp.2d 600, 605 (D. N.J. 2002) (citing Tessmar v. Grosner, 128 A.2d 467 (N.J. 1957)).  While "mere uncertainty as to the amount [of damages] will not preclude the right of recovery," sufficient evidence must "[afford] a basis for estimating the damages with some reasonable degree of certainty."  Sandler v. Lawn-A-Mat Chemical & Equip. Corp., 358 A.2d 805, 814 (N.J. Super. Ct. App. Div. 1976) (citing Tessmar 128 A.2d at 472).  The party seeking damages must provide "a reasonably accurate and fair basis for the computation of alleged lost profits."  V.A.L. Floors, Inc. v. Westminster Communities, Inc., 810 A.2d 625, 630 (N.J. Super. Ct. App. Div. 2002).

While Plaintiff's claim of damages is not a claim for lost profits per se, the Court believes that discussions regarding proof of lost profits are helpful

---

certainty.

[8] The Court notes that the original amount of damages requested in the Complaint was the "approximate amount of $431,236.23."  Docket 1, page 11.

19

considering that Plaintiff's damages are closely tied to the future profits of the Nebraska hotel, which had only operated as a Howard Johnson's Express Inn for seventeen months before the license was terminated.  See License Agreement ¶ 7.1.1 (requiring a monthly royalty payment of four percent of gross room revenues); see also Ramada Franchise Systems, 2005 WL 1490975 at *7 (recognizing that it is difficult, "if not impossible, to estimate the damages because of the transient lodging business, which involves daily rentals to different guests and fluctuates month to month based on several factors, including the national, regional, and local economies, the irregular travel patterns of commercial and leisure travelers, the entry or withdrawal of competitors from the market, and the effort, skill and resources of the operators").  New Jersey courts have stated that "[l]oss of profits, where based on sound fact and not on mere opinion evidence without factual support, is recognized as a proper measure of damages if 'capable of being estimated with a reasonable degree of certainty."  V.A.L. Floors, Inc., 810 A.2d at 630 (citing Rempfer v. Deerfield Packing Corp., 72 A.2d 204 (1950)).  Further, past experience can provide "a reasonable basis for the computation of lost profits with a satisfactory degree of definiteness."  Id.

With regard to new or speculative businesses that are "subject to great fluctuations in volume, costs or prices," proof of damages will be more difficult: "Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and

analyses, business records of similar enterprises, and the like."  Restatement (Second) of Contracts § 352 comment b (1981) (cited favorably in RSB Laboratory Services, Inc. v. BSI, Corp., 847 A.2d 599, 611 (N.J. Super. Ct. App. Div. 2004)).

At this time, the Court concludes that HJI has not provided adequate evidence in support of its claim that it is owed damages equivalent to $499,949.90.  Thus the Court sets this matter for hearing, where it can receive additional testimony in order to evaluate the appropriate amount of damages to which HJI is entitled.  The Court notes that HJI has claimed that Defendants are not entitled to an offset for any depreciation in HJI's operating costs due to the dissolution of its franchise agreement with Inn Development.  Docket 52, page 17.  The Court will similarly examine this question of mitigation of damages at the evidentiary hearing regarding damages, and it notifies HJI that it expects such testimony regarding savings to HJI as well as costs HJI has had to endure due to Inn Development's breach.  Finally, the Court notifies pro se Defendants that they are entitled to present their own evidence regarding Defendant's claim of damages.[9]

---

[9] The Court also notifies Defendants that because today's order definitively resolves the question of breach of the License Agreement, Defendants will not be allowed to present evidence of the sort submitted to date to oppose the motion for summary judgment.  The Court has ruled that Inn Development breached the License Agreement and that Orr and Logan are liable under the terms of the Guaranty, and the only question left for this Court to consider at the evidentiary hearing is the appropriate amount of damages owed to HJI under the terms of the License Agreement.

**Interest on Damages Award**

HJI also seeks interest on the damages award.  Docket 1, page 11; Docket 52, page 18.  The Court notes that under New Jersey law, an award of pre-judgment interest is at the trial court's discretion and can be awarded in unliquidated damages situations such as the one here.  Amba, LLC, 2006 WL 3041084 at *6.  Of course, such interest would only be available relative to those damages which HJI has suffered since the breach of the License Agreement, and would not be appropriate on any monies paid toward future damages.  See Super 8 Motels, Inc., 2006 WL 3041084 at *6 (stating that the purpose of awarding pre-judgment interest is to cover the value for the period "during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled"); see also Docket 52, page 18.  HJI also seeks post-judgment interest pursuant to 28 U.S.C. § 1961.  Docket 52, page 18.  As the Court defers the question of damages until after a hearing on this matter, the Court similarly declines to decide the appropriateness of either pre- or post-judgment interest at this time.

**Attorneys' Fees**

HJI also seeks an award of attorneys' fees and costs based on its legal action to seek damages for breach of the License Agreement.  Docket 1, page 11; Docket 52, page 18.  Plaintiff claims that it had incurred attorneys' fees in the amount of $10,786 and costs of $23.27 through April 14, 2008.  Docket 52, page 19; Docket 54; Docket 54-2.  Section 17.4 of the License Agreement

22

provides that "[t]he non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."  The Note includes a similar provision.  Docket 53-5, page 1.

While generally attorneys' fees are not available in breach of contract actions, New Jersey law "permits parties to contract for the shifting of fees and costs in the event of litigation between them, subject to judicial supervision for reasonableness."  Travelodge Hotels, Inc. v. Elkins Motel Assoc., Inc., No. Civ. 03-799(WHW), 2005 WL 2656676, *13 (D. N.J. Oct. 18, 2005).  From the unambiguous terms of the contract, Inn Development is liable for reasonable attorneys' fees incurred in connection with this action; therefore, as Guarantors, Orr and Logan are also responsible under the terms of the Guaranty.  However, HJI has not provided sufficient documentation to the Court regarding its costs in this matter.  See Docket 54 and attachments.  This Court will reserve judgment until Plaintiff supplies the Court with adequate documentation in support of its claim for costs and attorneys' fees, including hourly billing rates and a detailed statement of legal services rendered.

## CONCLUSION

For the reasons stated above, this Court grants Plaintiff's motion for summary judgment against Defendants Orr and Logan.  Regarding the Note, the Court finds that Guarantors Orr and Logan are liable for the balance on the Note of $10,983,72.  Plaintiff is to submit additional evidence to the Court

regarding the proper amount of interest due on the Note and regarding its claim for attorneys' fees and costs. The Court sets for a hearing the question of the amount of damages to which Plaintiff is entitled. The parties are ordered to confer with each other regarding potential hearing dates, which they should then communicate to the Court.

Therefore, good cause appearing, it is hereby

ORDERED that Plaintiff's motion for summary judgment, Docket 51, is GRANTED in accordance with this order. The Court orders an evidentiary hearing at which it will determine the amount of damages.

Dated December 22, 2008.

BY THE COURT:

*/s/ Andrew W. Bogue*

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE

24